George MAAYEH, Appellant,

v.

TRINITY LLOYDS INS. CO. and Fireman's Fund Ins. Co., Intervenor, Appellees.

No. 05-92-00445-CV.

Court of Appeals of Texas, Dallas.

Dec. 21, 1992.

Rehearing Denied Jan. 27, 1993.

John E. Collins, Dallas, for appellant.

David N. Kitner and Mark M. Donheiser, Dallas, for appellees.

Robert G. Hogue, Dallas, for intervenor, Fireman's Fund Ins. Co.

Before THOMAS, OVARD and KAPLAN [1], JJ.

## OPINION

OVARD, Justice.

Trinity Lloyds Insurance Company brought a declaratory action seeking a determination that it had no duty to defend its insured under a homeowner's insurance policy. Fireman's Fund Insurance Company intervened in the suit for the same purpose. The trial court granted summary judgment in favor of both insurance companies, and from such judgment George Maayeh, the insured, appeals. In five points of error he complains that the trial court erred in granting summary judgment for the insurance companies because fact issues existed, specifically fact issues concerning the duty to defend. He also asserts that the reservation of rights letter of Trinity Lloyds is not adequate and that Trinity Lloyds is estopped from asserting that it has no duty to defend. For the reasons given below, we overrule all of Maayeh's points of error and affirm the trial court's summary judgment as to both Trinity Lloyds and Fireman's Fund.

### FACTUAL AND PROCEDURAL HISTORY

George Maayeh is insured under homeowner policies issued by Trinity Lloyds and Fireman's Fund. Maayeh became involved in a lawsuit when the guardian ad litem for Maayeh's minor stepdaughter filed a plea in intervention seeking damages for personal injuries arising from Maayeh's alleged sexual abuse of her. Maayeh requested that the insurance companies defend him under a provision in the policies. Trinity Lloyds initially responded to Maayeh's request with a reservation of rights

1. The Honorable Jeff Kaplan, Justice, participated in this cause at the time it was submitted for decision. Due to Justice Kaplan's leaving office on November 20, 1992, he did not participate in the issuance of this opinion.

letter detailing possible conflicts of interest and exclusions from coverage. Trinity Lloyds then brought a declaratory action seeking a judgment that it had no duty to defend Maayeh in the stepdaughter's claim. Fireman's Fund intervened in the action to determine its liability under a similar policy. The insurance companies filed motions for summary judgment which the trial court granted, holding that the insured intentionally caused the injuries and that such injuries were expressly excluded from the companies' duty to defend clauses. Maayeh then appealed.

## SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, depositions, admissions, and affidavits show (1) that there is no genuine issue as to any material fact and (2) that the moving party is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). In determining whether the movant has met that burden, this Court assumes the truth of evidence favorable to the non-movant, indulges every reasonable inference on behalf of the non-movant, and resolves any doubt in the non-movant's favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–549 (Tex.1985).

■ All insurance policies at issue in this case contain the same standard exclusionary provision that the duty to defend for bodily injury coverage shall not apply "to bodily injury ... caused intentionally by or at the direction of the insured." Both sides agree that bodily injury occurred in this case; the essential controversy encompasses whether the injury was caused intentionally by the insured as a matter of law. This Court must apply the clause to the facts and determine whether the insurers have a duty to defend Maayeh. Because the policy excludes injuries caused intentionally by the insured, in order to obtain a summary judgment, the insurance companies were required to show that the injury was intentional as a matter of law. *See id.*

■ In determining an insurer's duty to defend, this Court examines the allegations contained in the third-party petition without regard to the truth or falsity of those allegations and gives liberal interpretation to their meaning. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24, 26 (Tex.1965). The extent of coverage is determined from the factual allegations in the complaint rather than the legal theories asserted. *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 272 (Tex.App.—Dallas 1992, n.w.h.) (citing *Continental Casualty Co. v. Hall*, 761 S.W.2d 54, 56 (Tex.App.— Houston [14th Dist.] 1988, writ denied), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503 (1990)). If the petition only alleges facts that, even if true, are excluded by the policy, the insurer does not have a duty to defend regardless of the legal theories involved in the case. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). The petition in this case alleges that Maayeh "repeatedly sexually molested [his stepdaughter] by causing his body to come into contact with [her] genitals and further by causing the [stepdaughter] to come into contact with his genitals." This Court must determine whether sexual molestation is an intentional injury under the terms of the policy as a matter of law.

The Texas Supreme Court has enunciated the standard used to determine the intent to injure. *Reed Tool Co. v. Copelin*, 689 S.W.2d 404 (Tex.1985). In *Reed*, which dealt with the intentional injury exception of the workers' compensation act, the court defined intent to injure as follows: "the actor desires to cause consequences of his act, or he believes that the consequences are substantially certain to result from it." *Id.* at 406 (quoting RESTATEMENT (SECOND) OF TORTS § 8a (1965)). Thus, if a person realizes that injury is substantially certain to follow from his actions, then the injury is intentional.

Although no Texas state court, while determining a duty to defend, has dealt directly with the question of intentional injury in a child molestation case, one court has considered the issue in the context of a case involving a sexually transmitted disease. *S.S. v. State Farm Fire & Casualty Co.*, 808 S.W.2d 668 (Tex.App.—Austin

1991, writ granted). In that case the insured engaged in consensual sexual intercourse with another adult but did not disclose to his partner that he knew or suspected that he had genital herpes. The person soon thereafter contracted the disease and sued the insured for damages. The court, in holding that an intent to harm could not be inferred as a matter of law in the case, made a distinction between the intent to act and the intent to injure. The court concluded that the mere intent to engage in consensual intercourse was not sufficient to infer intent as a matter of law to injure a person by transmitting the disease. *Id.* at 670.

Although Maayeh correctly states the reasoning in that case, his reliance upon it is misplaced. The facts in this case are readily distinguishable. Here the sexual contact occurred between a stepfather and his minor stepdaughter rather than two consenting adults. Further, Maayeh was convicted of a felony in connection with his sexual behavior towards his stepdaughter.

The court in *State Farm* also acknowledged that certain conduct is "so extreme or outrageous that an intent to harm can be inferred as a matter of law." *Id.* at 670–71. The court then cited an example of such "extreme or outrageous conduct" from a Colorado Supreme Court case where that court inferred intent to harm as a matter of law because child molestation was involved. *Id.* at 671 (citing *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415, 419 (Colo.1990) (child molestation warrants inference of intent to harm)). Perhaps the man in *State Farm* did not fully realize the potential for harm from his actions, but the same cannot be said for an individual who molests a child. Such actions are substantially certain to cause injury to the child.

Numerous other jurisdictions have inferred intent to injure as a matter of law in cases involving sexual contact with a child. *Landis v. Allstate Ins. Co.* 516 So.2d 305, 307 (Fla.Dist.Ct.App.1987); *Lehmann v. Metzger*, 355 N.W.2d 425, 426 (Minn.1984). The courts in many cases have recognized that in child molestation cases some harm is inherent in those acts; thus, the in-

sured's subjective intent is irrelevant in determining coverage. *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 332–33, 206 Cal.Rptr. 609, 613 (1984); *People v. Austin*, 111 Cal.App.3d 110, 114–15, 168 Cal. Rptr. 401 (1980). One court has determined that the inherent harm in child molestation is not restricted to cases involving penetration or to molestation occurring over a lengthy period of time. *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581, 585–86 (W.Va.1988).

Recently, a federal court in Texas, under facts very similar to those in the case at bar, concluded that Texas law would likely follow that of other jurisdictions which conclude "that any sexual contact with a child by an adult is conduct that is so outrageous or extreme that an intent to injure can be inferred as a matter of law." *Commercial Union Ins. Co. v. Roberts*, 815 F.Supp. 1006 (W.D.Tex.1992). We agree with the majority of jurisdictions and the federal district court in this state which have held, that in cases of sexual molestation, intent may be inferred as a matter of law.

Maayeh contends that an important aspect of this case concerns the fact that the stepdaughter alleges injuries resulting from several incidents. The summary judgment proof included the conviction record of Maayeh for only one incident of sexual molestation. Maayeh candidly admitted that if the allegation included only a single act, the harm would have been intentional. He argues that intent to harm cannot be inferred as a matter of law from the incidents for which he was not convicted. The fact that the record does not show a conviction for each incidence of sexual molestation alleged in the petition does not transform multiple acts with intentional harm into negligence for the purpose of the insurance policy. If the harm is intentional for a single incident, the issue regarding multiple incidents is not whether intentional harm exists, but rather to what degree it exists.

Maayeh also argues that allowing an exclusion in this case amounts to rewriting the contract between the parties. We dis-

agree. The policy plainly excludes intentional injuries. A court which finds as a matter of law that an injury is intentional is not rewriting the contract but simply enforcing the contract as written. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex.1987). In addition, these injuries are not the types of injuries the parties contemplated covering. *See id.* If the standard provision for duty to defend used in the policy in this case includes injuries for child molestation, then any case of child abuse, incest, and possibly a myriad of sexual crimes may be included as well under the theory that the insured did not intend the harm.

Maayeh asks us to make a distinction between intentional act and intentional harm. We conclude that if a person engages in an intentional act which is substantially certain to cause harm, then the resulting injury is intentional. This standard applies here because Maayeh's sexual contact with his minor stepdaughter was substantially certain to cause her harm regardless of any protestations of Maayeh that he did not mean to cause her harm. We hold that an intent to harm can be inferred as a matter of law in cases of sexual molestation. Accordingly, we overrule Maayeh's points of error one, two, and three.

### RESERVATION OF RIGHTS AND ESTOPPEL

Maayeh asserts that a fact question exists as to whether the reservation of rights letter sent by Trinity Lloyds is valid; he further maintains that Trinity Lloyds is estopped from raising policy defenses. Trinity Lloyds sent a reservation of rights letter to Maayeh explaining that a possible conflict of interest might result if Trinity Lloyds defended Maayeh. The letter also explained that intentional injuries were not included in the coverage. If an insurer becomes aware of a possible conflict of interest, the insurer has a duty to inform the insured immediately so that the insured may protect himself if necessary. *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552, 558 (Tex.1973).

Maayeh appears to contend that Trinity Lloyds knew that potential coverage existed on the negligence claim in the underlying action and that the reservation of rights letter was a mere invalid attempt to secure a new agreement with Maayeh. He further argues that the language of the letter amounts to a judicial admission of a duty to defend so that Trinity Lloyds is now estopped to deny such a duty. Maayeh does not cite any authority for this proposition, nor does he explain how a letter that merely states the restrictions to coverage operates as a judicial admission of coverage. Likewise, we are unable to find any reference to a new contract or attempt to make a new contract in the letter. Thus, we conclude that Trinity Lloyds was simply informing Maayeh of the possible limitations to coverage and conflicts of interest that may have been present. As such the letter does not operate as an admission or estoppel. *See id.* We overrule Maayeh's points of error four and five.

### CONCLUSION

We hold that the trial court did not err in granting summary judgment in favor of Trinity Lloyds and Fireman's Fund Insurance Companies. When an insured sexually molests a child, a court may infer intent to injure as a matter of law such that coverage under these policies is excluded under the intentional injury exclusion, and the insurance companies have no duty to defend the insured. Further, we conclude that Trinity Lloyds' reservation of rights letter did not operate as an admission or waiver. Consequently, we overrule all of Maayeh's points of error and affirm the trial court's judgment.