STATE FARM FIRE AND CASUALTY
COMPANY, Plaintiff,

v.

Adam BROOKS and Jane
Doe, Defendants.

No. 6:97CV425.

United States District Court,
E.D. Texas,
Tyler Division.

Sept. 17, 1998.

Paul M. Boyd, Paul M. Boyd PC, Tyler, TX, for State Farm Fire And, State Farm Fire and Casualty, plaintiff.

Eric Miller Albritton, Holmes Law Office, Longview, TX, for Adam Brooks, defendant.

Thomas James Stutz, Law Offices of Windle Turley, Dallas, TX, for Jane Doe, defendant.

## ORDER ON SUMMARY JUDGMENT

STEGER, District Judge.

On this day came on to be considered *Plaintiff's Motion for Summary Judgment* (Docket No. 14). After careful consideration, the Court is of the opinion that the following order should follow.

### FACTS OF THE CASE

The plaintiff, State Farm Fire and Casualty Company, brought this declaratory judgment action to determine insurance coverage in federal district court based on diversity jurisdiction. 28 U.S.C. § 1332(a). The plaintiff seeks to avoid defense and indemnification of Defendant Adam Brooks in a state court action brought by Defendant Jane Doe. Jane Doe brought suit in the 196th Judicial District Court of Hunt County, Texas, Cause No. 57648, alleging that Defendant Brooks sexually assaulted her on January 29, 1995, while Defendant Brooks was intoxicated. (Plaintiff's Second Amended Original Petition at ¶ 3, *Jane Doe v. Adam Brooks, et. al.,* Cause No. 57648, 196th Judicial District, Hunt County, Texas). Specifically, Defendant Doe alleged: "Defendant [Brooks] committed sexual acts to which the Plaintiff did not consent which sexual acts were a proximate cause of the injury to the Plaintiff and the damages described below. Unconsenting sexual acts were an invasion of Plaintiff's privacy and/or negligent acts for which Defendant is legally responsible." (*Id.* at ¶ 6). Defendant Doe claims for damages from Defendant Brooks including: (1) reasonable and necessary medical expenses, past and future; (2) physical injuries, past and future, including an increased likelihood of cervical cancer; (3) physical pain, past and future; (4) mental anguish, past and future; and (5) loss of enjoyment of life, past and future. (*Id.* at ¶ 7).

Plaintiff State Farm issued a homeowner's insurance policy, numbered 93–07–0455–9 and effective May 16, 1994 through May 16, 1995, to Robert S. Jr. and Patricia

Brooks, parents of Defendant Brooks.[1] The policy provided for liability coverage for "bodily injury" caused by an "occurrence." The policy defines an "occurrence" as "an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period." The policy also contains what is commonly known as the "intentional act exclusion," which specifically eliminates from coverage "bodily injury or property damage which is caused intentionally by or at the direction of an insured."

With no disputed questions of fact on the duty to defend issue, the case is now before the Court on cross motions for summary judgment. The parties dispute interpretation of the term, "occurrence," and the applicability of the intentional act exclusion to the instant case.

### STANDARD OF REVIEW

In deciding whether to grant a motion for summary judgment, the Court "review[s] the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party" and determines whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir.1991) (citing *Duvall v. The Ritz Carlton Hotel Co.*, 946 F.2d 418, 420 (5th Cir.1991), and quoting Fed.R.Civ.P. 56(c)). An issue is "genuine" only " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary

judgment." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "This requires that a plaintiff' make a showing sufficient to establish the existence of an[y] element essential to that party's case, and on which that party will bear the burden at trial." *Nowlin v. R.T.C.*, 33 F.3d 498, 501 (5th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Since there are no disputed fact issues concerning the duty to defend in this case, and the Court is faced with cross motions for summary judgment, the Court finds that summary judgment on this issue is proper.

The Court also acknowledges the plaintiff's argument that declaratory judgment actions are a favored means of resolving coverage disputes. *See generally State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996).

### ANALYSIS

The Court will first examine the basic principles governing coverage disputes in Texas. Next, the Court will discuss the issue of intoxication, its effect on intent, and the ramifications of facts alleging Defendant Brooks' intoxication on Defendant Doe's petition. The Court will then apply Texas law concerning the intentional act exclusion and the definition of "occurrence" in the instant policy. Finally, the Court will briefly address policy concerns in the area of insurance coverage.

#### (A) Texas Law and Insurance Coverage Disputes

Texas rules of contract interpretation control in this diversity case. *Canutillo Independent School District v. National Union Fire Insurance Company of Pittsburgh, PA*, 99 F.3d 695, 700 (5th Cir. 1996) (citing *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir.1995); *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 443

---

1. The issue of Defendant Brooks' coverage under the policy is not contested by the parties.

(5th Cir.1994); Tex.Ins.Code Ann. art. 21.42 (West 1981)). The terms in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994), (citing *Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex.1979).

■ Under the "complaint allegation rule," factual allegations in the pleadings and the policy language determine an insurer's duty to defend. *Trinity Universal Insurance Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex.1994). The duty to indemnify may only be triggered by the actual facts establishing liability in the underlying suit. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex.1965).

■ The extent of coverage under an insurance policy, for purposes of determining an insurer's duty to defend, is determined from factual allegations in the complaint rather the legal theories presented. *Maayeh v. Trinity Lloyds Ins. Co.*, 850 S.W.2d 193, 195 (Tex.App.—Dallas 1992). If the petition only alleges facts that, even if true, are excluded by the policy, the insurer does not have a duty to defend regardless of the legal theories involved in the case. *Id.*

■ An insurer's duty to defend and duty to indemnify are distinct and separate duties. *Farmers Texas County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997). *See also Cowan*, 945 S.W.2d at 821–22. An insurer may have a duty to defend and, eventually, not indemnify. *Griffin*, 955 S.W.2d at 82. A plaintiff pleading both negligent and intentional conduct may trigger an insurer's duty to defend, but a finding that the insured acted intentionally and not negligently may negate the insurer's duty to indemnify. *Id.*

### (B) Negligence Claims and the Effect of Intoxication on Intent

■ The defendants argued in their briefs that Defendant Brooks' intoxication the night of the alleged assault vitiates his intent, thereby rendering his conduct "accidental." Their purpose, clearly, is to bring his conduct under the definition of a covered "occurrence." As a general rule, Texas criminal and civil law does not negate intent by intoxication. *See generally Wessinger v. Fire Insurance Exchange*, 949 S.W.2d 834, 840 (Tex.App.—Dallas 1997). For example, TEX.PENAL CODE. ANN. § 8.04 provides that voluntary intoxication does not constitute a defense to the commission of a crime.

In *Wessinger*, the homeowners' insurer sought a declaratory judgment that its policy did not provide coverage for the injuries suffered by the victim of the insured. The insured, who was intoxicated, repeatedly struck the victim in the eye, causing permanent eye damage. The insured claimed that his intoxication negated his intent to commit the assault and the conduct was therefore a covered "accident." The Court held that an assault was still an intentional·act despite the insured's intoxication. 949 S.W.2d at 840. An insured should not be able to assert voluntary intoxication as a basis upon which to obtain coverage for something which is otherwise not covered and thereby avoid the financial responsibility for his conduct. *Id.* at 840, *citing Scott v. Gardner*, 137 Tex. 628, 635–36, 156 S.W.2d 513, 517 (1941). Similarly, the Eastern District recently held that intoxication does not render otherwise intentional conduct accidental. *See Metropolitan Property & Cas. Co. v. Murphy*, 896 F.Supp. 645, 648 (E.D.Tex.1995).

In the instant case, Defendant Brooks may not transform his alleged intentional assault of Defendant Doe into negligent conduct merely by pointing his finger at a beer bottle. An intentional act is still an

intentional act, despite Defendant Brooks' intoxication. The Court therefore finds that the mere mention of his intoxication in Defendant Doe's state court petition does not create a cause of action for negligence, nor does it create the factual base to support such a claim.[2]

■ The defendants obviously seek to change an intentional act into a negligent act for the purpose of avoiding the intentional act exclusion and the harsh confines of the policy's definition of "occurrence." The defendants, who also complain vociferously that the plaintiff has attempted to introduce extraneous evidence by attaching a letter from Defendant Doe to the Dean of Students at East Texas State University to its Motion for Summary Judgment,[3] forcefully advocate this court's compliance with the "eight corners" rule. The "eight corners" rule limits a court when considering coverage issues to the plaintiff's complaint and the policy itself. However, in their briefs opposing summary judgment, the defendants seem to advocate a "twelve corners" rule of their own, pointing to possible defenses and conceivable interpretations of a clear petition. The defendants would seemingly have this court read the twelve corners of the petition, the policy, *and* the defendant's underlying state court answer. The law is clearly contrary to this contention. The defendants must rely only on the facts alleged in the petition, not on speculation of what *could* have been alleged, to support any purported claim for negligence.

### (C) Texas Law and the Intentional Act Exclusion

The policy in the instant case specifically excludes coverage of "intentional acts," stating in Section II—Exclusions (1) that coverage does not apply to, "bodily injury or property damage which is caused intentionally by or at the direction of the insured." The Court will now examine whether this provision excludes coverage in the instant case. The defendants claim this provision requires a showing of a subjective intent to harm by Defendant Brooks. The plaintiff contends that an intent to harm should be inferred.

### (C)(1) Inferred Intent in Child Molestation Cases

Both parties dispute the relevance of Texas cases concerning homeowner's insurance coverage for child sexual abuse. Texas courts have repeatedly found that an intent to harm may be inferred for child molestation and such incidents are patently excluded from most insurance policies. In *Gandy*, the Court found that an intent to injure may be inferred when the character of the act done is such that the degree of certainty that the conduct will cause injury is sufficiently great to justify an inference as a matter of law that the actor intended to cause injury. 880 S.W.2d at 139. The more likely that harm will result from the conduct, the more likely it is that intent to harm may be inferred as a matter of law. *Id.* at 139–40. "When sexual abuse is committed on a minor, the likelihood of harm is sufficiently certain that intent may be inferred as a matter of law." *Id.* at 140. In cases of sexual molestation, intent may be inferred as a matter of law for purposes of the intentional injury exclusion in homeowner's insurance policies. *Maayeh*, 850 S.W.2d at 196. *See also Allen v. Auto. Ins. Co. Of Hartford Conn.*, 892 S.W.2d 198, 199 (Tex.App.—Houston [14th Dist.] 1994).

### (C)(2) Inferred Intent in Sexual Acts Between Adults

■ As an extension of the inference of intent in child sexual abuse cases, some

---

2. *See generally Farmers Texas County Mut. Ins. v. Griffin,* 955 S.W.2d 81, 83 (Tex.1997) (Finding that allegations of negligence and gross negligence were inadequate when facts alleged only supported claims of intentional behavior).

3. The Court has not relied on the letter in any way in ruling on the motions for summary judgment.

jurisdictions have inferred intent in cases of forcible sexual conduct between adults, as in the instant case. The plaintiff urges that this court adopt a similar rule.

In a recent case, however, the Texas Supreme Court refused to infer intent to harm when adults engaged in *consensual sex*. In that case, State Farm, as insurer on a homeowner's policy, sought a declaratory judgment that it was not liable to a claimant who had contracted genital herpes from the insured. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374 (Tex. 1993). The trial court granted summary judgment for State Farm, but the Supreme Court affirmed the appellate court's reversal. The Court held that an issue of material fact existed as to whether the insured knew with substantial certainty that his actions would harm the claimant and that intent to harm could not be inferred. *Id.* at 382.

S.S. contracted genital herpes when she engaged in consensual sexual intercourse with G.W., owner of a State Farm homeowner's insurance policy. S.S. filed suit against G.W., alleging negligent transmission of genital herpes, and State Farm agreed to defend him under a reservation of rights. *Id.* at 375–76. G.W. later rejected State Farm's offer of counsel. *Id.* at 376. S.S. and G.W. entered into an agreed judgment in which G.W. assigned one-third of his claims against State Farm. *Id.*

The parties conceded that the "intentional act" requirement was met in the case, as S.S. and G.W. had engaged in consensual sex. *Id.* However, the parties disputed whether G.W. had intended to cause harm to S.S. The Court found that he did not. Summary judgment evidence indicated that G.W. did not believe that it was possible to transmit the disease without an active lesion and therefore did not show that G.W. knew with substantial certainty that engaging in sexual intercourse with S.S. would result in transmission of the disease. *Id.* at 378. The Court held that there was a fact question whether

G.W. was operating under the mistaken impression that he could not transmit herpes when he had no symptoms of the disease, and summary judgment was therefore improper. *Id.* at 379.

The Court also refused to infer intent to injure as a matter of law, as urged by State Farm. *Id.* at 379. The Court noted that jurisdictions which infer intent to harm usually do so only in instances of sexual misconduct with minors or forcible sex acts between adults. *Id.* at 379. The Court wrote that each set of facts must be considered on a case-by-case basis, and the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law. *Id.* The Court held that *S.S.* differed from cases in which intent could be inferred because G.W. and S.S. were consenting adults. *Id.*

The defendants contends that the Court should not infer intent based on S.S., while the plaintiff distinguishes S.S. from the instant case based on consent.

Before discussing the applicability of *S.S.*, the Court will briefly examine a case presented by the plaintiff as persuasive on the issue of inferred intent. In its *Brief in Support of Plaintiff's Motion for Summary Judgment* (Docket No. 15), the plaintiff refers to a recent Texas case not designated for publication involving the sexual assault of an adult. *Reed v. State Farm Fire and Casualty Company*, 1996 WL 355170 (Tex.App.—Beaumont) (not designated for publication). In *Reed*, the Court of Appeals held that an intent to harm will be inferred in such cases because the harm resulting to an adult from a sexual assault is no less real than that suffered by a child. *Id.* at *6. "The principle of inferred intent is not limited to acts of child molestation but necessarily extends to act [sic] of sexual assault regardless of age." *Id.*

As this case was not designated for publication, the Court does not rely on its reasoning. The Court only points to *Reed*

as an example of how one Texas court handled the very issue facing this court in the instant case. However, the *Reed* court noted that six states have adopted the inferred intent rule in adult sexual assault cases based on the notion that harm inherently flows from forced sex without consent.[4] And this court also notes that the Texas Supreme Court mentioned as dicta in *S.S.* that "jurisdictions which infer intent in sexual misconduct usually do so only in instances of sexual misconduct with minors or *forcible sex acts between adults.*" 858 S.W.2d at 379 (emphasis added). The Court in *S.S.* noted the Texas exception for sexual misconduct with minors, and it did not expressly disapprove of the exclusion adopted by other jurisdictions for *forcible* sex acts between adults.

The defendants urge the Court to follow *S.S.* and refuse to infer intent in the instant case. However, this court does not find *S.S.* to be controlling, as the facts are clearly distinguishable. In *S.S.*, the sex was consensual. In the instant case, Defendant Doe's underlying state court petition clearly characterizes the sex as nonconsensual. Obviously, it is impossible to infer intent to harm when two persons voluntarily and willingly chose to have sex, as in *S.S.* However, this court is confined to the underlying petition and may not consider any extraneous evidence. Defendant Doe pled no facts in the petition which would support any speculation of consensual sex, nor did she plead any facts which would support Defendant Brooks' negligent belief in consensual sex. The mere inclusion of the word, "negligent," in the petition, without more, does not suffice to alter Defendant Doe's otherwise unswerving allegation of nonconsensual sex.

The defendants mischaracterize the standard enunciated by the Texas Supreme Court in *S.S.* The defendants would have the court believe that a subjective intent to harm must always be found to transform an act into an "intentional act." To the contrary, the Court wrote that each set of facts must be considered on a case-by-case basis, and the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law. *S.S.*, 858 S.W.2d at 379. Clearly, the risk of harm resulting from forcible, nonconsensual sex, as alleged here, is great. Finally, and most importantly, the Court held that *S.S.* differed from cases in which intent could be inferred because G.W. and S.S. were consenting adults. *Id.* In this case, however, there was no consent under the facts as alleged.

However, though the Court finds compelling support for inferring an intent to harm in cases in which sexual assault has been alleged, the Court hesitates to establish new law in Texas based on an unreported appellate court case and the reasoning of other jurisdictions. Therefore, the Court declines to infer an intent to harm in the instant case.

### (D) Texas Law and the Definition of 'Occurrence'

■ Despite both parties' reliance on arguments in favor of, or against, inferred intent, the Court finds reliance on inferred intent and the intentional act exclusion unnecessary in the instant case. Instead, the Court relies on established Texas jurisprudence concerning the definition of "occurrence."

As Texas law governs the underlying suit, the Court finds the reasoning of the Supreme Court of Texas in a recent case controlling. *See Cowan,* 945 S.W.2d at 821. In the *Cowan* case, a photo lab clerk, Gregory Gage, circulated provocative photos of the plaintiff in the underlying suit, Nicole Cowan. Cowan sued Gage's home-

---

**4.** *Id.*, citing *Merced Mut. Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 261 Cal.Rptr. 273, 281 (1989); *Altena v. United Fire & Cas. Co.,* 422 N.W.2d 485, 490 (Iowa 1988); *Belsom v. Bravo,* 658 So.2d 1304,1306 (La.Ct.App.1995); *Alber v. Farm Bureau Mut. Ins. Co.,* 441 Mich. 886, 492 N.W.2d 246 (1992); *Allstate Ins. Co. v. S.F.,* 518 N.W.2d 37, 39 (Minn.1994); *New York Underwriters Ins. Co. v. Doty,* 58 Wash. App. 546, 794 P.2d 521, 525 (1990).

owner's insurance company to collect a judgment against Gage for negligence and gross negligence. The Supreme Court in that case construed the policy, the relevant provisions of which were analogous to the instant case, finding that an insured's intentional act which results in unintended injury is not an accident and thus not a covered "occurrence." *Id.* at 828.

The policy in the *Cowan* case defined an "occurrence" as "an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period."[5] *Id.* at 826. The defendant insurance company argued that there was no "occurrence" under the facts of the case because there was no "accident." *Id.* Gage contended that, since he did not intend for Cowan to learn of his actions, the harm was unforeseen and unexpected and was therefore accidental. *Id.* It was undisputed that Gage had intentionally made the copies of the photographs and showed them to his friends, although Gage testified that he did not intend for Cowan to learn of his actions. *Id.*

The Supreme Court adopted the reasoning of *Republic National Life Insurance Co. v. Heyward*, 536 S.W.2d 549 (Tex. 1976), writing that an event is determined by its effect. 536 S.W.2d at 555. The Court in that case held that an effect that cannot be reasonably anticipated from the use of the means that produced it, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means. *Id. See also Maayeh*, 850 S.W.2d at 197 (Declining to distinguish between an intentional act and intentional harm, concluding that, if a person engages in an intentional act which is substantially certain to cause harm, then the resulting injury is intentional); *Allen v. Auto. Ins. Co. Of Hartford Conn.*, 892 S.W.2d 198, 200 (Tex.App.—Houston [14th Dist.] 1994).

Relying on such reasoning, the Court in *Cowan* found that Gage's conduct was not an accident, as he did exactly what he intended to, do when he purposefully copied the photographs and showed them to his friends. *Cowan*, 945 S.W.2d at 827. "That Gage did not expect or intend Cowan to learn of his actions is of no consequence to our determination of whether his actions were an 'accident.'" *Id.* at 827–28. The court therefore concluded that the homeowner's insurance policy did not cover any of the damages owed by Gage to Cowan for invasion of privacy. *Id.* at 828.

In the instant case, the Court finds that, based on the state court petition of Defendant Doe, Defendant Brooks' alleged conduct was nonconsensual and not accidental, regardless of what his subjective intent was. The court finds that sexual contact is patently intentional, not accidental, and would not constitute an "occurrence." "Voluntary and intentional acts, even though they may result in injury which is unexpected, unforeseen, and unintended, are not covered by the policy." *Murphy*, 896 F.Supp. at 648. Defendant Doe alleged an intentional act—sexual assault—and whether or not Defendant Brooks subjectively believed that his actions were consented to is of no consequence under the analysis used by the Texas Supreme Court in the *Cowan* case.

■ The Court also finds that Defendant Doe's petition does not create a cause of action for negligence against Defendant Brooks. Defendant Doe does not allege any facts to support such a claim. Defendant Brooks contends in his *Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant Adam Brooks' Motion for Partial Summary Judgment* that a "liberal interpretation" of the petition can be understood to be alleging that Brooks was negligent. However, as previously noted,

---

**5.** The Court notes that the definition of "occurrence" in the *Cowan* policy is the same as that in the instant policy.

this court must rely on the facts alleged and not the legal theories set forth. Further, Defendant Brooks' claim that all references to the sexual assault of Defendant Brooks but one sound in negligence is simply untrue. In fact, all references in the petition to negligence but one refer to other parties, *not* Defendant Brooks, and to different conduct, *not* the sexual assault. The one reference to negligence against Defendant Brooks is unsupported by facts.

Since the Court must rely only on Defendant Brooks' underlying state court petition, the Court finds that the acts alleged are intentional and are therefore excluded from coverage, as they do not meet the definition of "occurrence." State Farm therefore has no duty to defend.

The Eastern District recently addressed a similar coverage issue. *See Murphy,* 896 F.Supp. 645. In that case, the homeowner's insurer sought a declaratory judgment to determine whether it had a duty to defend or indemnify an insured against a claim alleging that, while the claimant lived with the insured, the insured secretly watched her shower, dress, and sleep through holes he had drilled in the walls. *Id.* at 646–47. The Court held that the claimant's petition did not allege conduct satisfying the policy's definition of "occurrence," even though the claimant was asserting a negligent invasion of privacy claim. *Id.* at 648.

The definition of "occurrence" under the policy in the case was exactly the same as the definition of "occurrence" under the policy in the instant case, requiring an "accident." The Court in *Murphy* held that the insured's conduct was, on its face, intentional. "It is not accidental conduct and would not constitute an occurrence under the policy." *Id.* at 648. In the instant case, Defendant Brooks' alleged sexual assault was clearly intentional, not accidental.

The *Murphy* Court also declined to grant summary judgment based on an intentional act exclusion similar to the one in this case, relying on the requirement of an intent to harm by the Texas Supreme Court in *S.S.* However, the Court went on to say that, "the holding in S.S. does not preclude the granting of summary judgment on Metropolitan's claim that the facts alleged by Bills do not constitute an occurrence under the policy." *Id.* The insurer therefore had no duty to defend or indemnify. Similarly, in the instant case, this court is relying on the definition of "occurrence," not the intentional act exclusion.

Finally, the Court also notes the opinion of the Northern District of Texas in *Old Republic Insurance Co. v. Comprehensive Health Care,* 786 F.Supp. 629 (N.D.Tex. 1992). In that case, the insurance company brought a declaratory judgment action in federal court seeking a determination of coverage for an underlying state suit. The issue before the Court was whether the insurer had a duty to defend a sexual harassment suit filed against the insured employer. The Court held that intentional or willful acts were not "occurrences" as commonly defined by Texas law, and the insurance company did not have a duty to defend.

The Court first noted that, under Texas law, an insurers' duty to defend is based solely on the allegations of the state court petition, which are to be considered without regard to their truth or falsity. *Id.* at 631. The Court then construed the policy in question to determine whether sexual harassment was covered. The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured." *Id.* at 632–33. The Court concluded that identical or substantially similar definitions of "occurrence" have been consistently interpreted as excluding coverage for intentional acts. *Id.* at 633, *citing Fidelity & Guar. Ins. v. City of Kenner,* 894 F.2d 782, 783 (5th Cir.1990) (Alleged anti-union conduct of city employees in supervisory positions is

not an "occurrence"); *Vaughner v. Pulito,* 804 F.2d 873, 876 (5th Cir.1986) (Civil rights violations excluded from coverage by definition of "occurrence"); *Berry v. McLemore,* 795 F.2d 452, 456–58 (5th Cir. 1986) (Due to "occurrence" provision, town's insurance policy did not cover tortious act of town employee); *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 634–35 (Tex.1973) (Intentional removal of property not an "occurrence"); *Baldwin v. Aetna Cas. & Sur. Co.,* 750 S.W.2d 919, 920 (Owner of trucking company not entitled to coverage for intentional damage to state highways caused by company's trucks). Therefore, the Court held that the intentional act alleged—sexual harassment—could not fall under the definition of "occurrence" as commonly defined by Texas law and was not covered.

In the instant case, much as in the cases cited above, the underlying plaintiff has alleged an intentional act which is excluded from the traditional definition of "occurrence." Clearly, the purpose of such coverage is to minimize exposure to unforeseen risks—accidents—not an intentional act.

### (E) Public Policy Considerations

The Court will now briefly address some of the policy reasons supporting its holding in the instant case. Homeowner's insurance policies are an inexpensive method of providing general coverage and allowing individuals to insure themselves against unforeseen occurrences. *See generally Commercial Union Ins. Co. v. Roberts,* 815 F.Supp. 1006, 1007 (W.D.Tex.1992) (Holding that injuries resulting from sexual molestation are not a "risk contemplated by the parties" to the insurance policy). The Brooks and State Farm certainly could not have reasonably contemplated the risk of a sexual assault suit when entering into the contract for homeowners' insurance. Furthermore, without coverage, such occurrences might financially overwhelm individuals. If, however, courts were to expand coverage to include forc-ible sex acts, child molestation, or other clearly intentional injuries, the rates for all insureds would increase, and policies would become too expensive for a majority of the public. *Id.*

### CONCLUSION

The Court holds that State Farm has no duty to defend, and, therefore, no duty to indemnify, Defendant Brooks in the state court suit brought by Defendant Doe. Based solely on Defendant Doe's underlying petition, the alleged sexual assault was intentional and nonconsensual. It is well settled Texas law that an insurer has no duty to defend if the underlying petition fails to allege facts within coverage of the policy. Even if true, the alleged acts of Defendant Brooks do not raise a controversy that falls within the definition of a covered "occurrence" under the policy.

It is therefore

**ORDERED** that *Plaintiff's Motion for Summary Judgment* (Docket No. 14) is in all things **GRANTED.** It is further

**ORDERED** that this action be **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that all other further relief requested not herein expressly granted is hereby **DENIED.**