**PARADIGM INSURANCE COMPANY,**
Appellant,

v.

**TEXAS RICHMOND CORPORATION**
d/b/a The Men's Club of Houston, Kent
Stevens, and David Fairchild, Appellees.

No. 14–95–00747–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 30, 1997.

Rehearing Overruled April 10, 1997.

Glennis E. Sims, Sidney H. Davis, Dallas, for appellant.

Michael Phillips, Evelyn T. Ailts, Houston, for appellees.

Before YATES, O'NEILL and CANNON,* JJ.

## MAJORITY OPINION ON REHEARING

O'NEILL, Judge.

This case involves a declaratory judgment action regarding the duty to defend under an insurance policy that was decided in favor of the insured on opposing motions for summary judgment. In three points of error, the Paradigm Insurance Company ("Paradigm"), appellant, contends the trial court erred in (1) granting the motion for summary judgment of Texas Richmond Corporation d/b/a The Men's Club of Houston, Kent Stevens, and David Fairchild (hereinafter collectively "The Men's Club"), (2) denying its motion for summary judgment, and (3) denying its objections and motion to strike The Men's Club's exhibits. By opinion dated July 11, 1996, this court affirmed the judgment of the trial court. Paradigm's Motion for Rehearing was granted. The July 11, 1996 opinion is withdrawn, and this opinion is substituted in its place. We reverse the judgment of the trial court, and render judgment in favor of Paradigm.

### Background

Paradigm issued a commercial general insurance policy to The Men's Club effective from June 30, 1993 to June 30, 1994. The policy provided coverage in relevant part as follows:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

The declarations page of the policy indicates a premium for commercial general liability coverage and does not indicate a premium for liquor liability coverage. In fact, the policy contained a liquor liability exclusion, which expressly excluded from coverage the following:

2. Exclusions

This insurance does not apply to:

\* \* \* \* \* \*

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.[1]

It is undisputed that The Men's Club sells alcoholic beverages to its patrons.

In a separate cause of action, Majorie Butler filed suit against The Men's Club and its valet parking service, Five Star Parking. The factual allegations in Butler's fifth amended petition allege that on the morning of October 2, 1993, she was a passenger in an automobile which was struck by a car driven by Raphael Moraczewski. Butler alleged that The Men's Club served and continued to serve alcoholic beverages to Moraczewski even though it was apparent he was obvious-

---

* The Honorable Bill Cannon (retired) sitting by assignment.

1. The policy contained a Liquor Liability Exclusion endorsement that modified the application of the exclusion as follows:

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:
(a) Requires a license;
(b) Is for the purpose of financial gain or livelihood; or
(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

ly intoxicated to the extent that he presented a clear danger to himself and others. Butler claimed that "[s]aid conduct by The Men's Club contributed to Moraczewski's state of intoxication and was a proximate cause of the injuries to [Butler]." She further alleged that agents and employees of Five Star and The Men's Club were employed as parking attendants, and that "[s]aid parking attendants retrieved Moraczewski's car and negligently permitted Moraczewski to drive away, even though it was apparent to the parking valets that Moraczewski was intoxicated." Butler claimed that "Moraczewski's negligence and negligent driving occurred because of his state of intoxication."

Butler alleged that The Men's Club was negligent per se for violations of the Texas Alcoholic Beverage Code, and was negligent and grossly negligent in (1) monitoring and failing to monitor Moraczewski and other patrons for intoxication, (2) failing to deter, restrain, or prevent Moraczewski and other intoxicated patrons from driving after leaving The Men's Club, (3) failing to arrange for alternate transportation for Moraczewski and other intoxicated patrons, and (4) failing to adequately train its employees to recognize intoxicated patrons, to prevent them from driving after leaving the club by arranging for alternate transportation or to otherwise ensure that they would not constitute a danger to the public after leaving the club. Butler also alleged that The Men's Club was negligent and grossly negligent as follows:

> In failing to hire and select competent employees ... who were [sic] be charged with monitoring Moraczewski's intoxication, deterring, restraining or preventing Moraczewski and other intoxicated patrons from driving, and arranging for alternate transportation for Moraczewski.

> In failing to adequately monitor and supervise its employees ... who were charged with monitoring Moraczewski's intoxication, deterring, restraining or preventing Moraczewski and other intoxicated patrons from driving, and arranging for alternate transportation for Moraczewski.

> In failing [to] hire and select a competent valet parking service.

> In failing to adequately supervise, monitor, and evaluate the work and services performed by its valet parking service, which was charged with monitoring the intoxication of those patrons requesting retrieval of their automobiles.

In addition, Butler alleged that The Men's Club was vicariously liable for the acts and omissions of the valet parking service:

> The Men's Club is vicariously liable for the acts and omissions of its agents and employees, including the tortious acts and omissions of its agent Five Star Parking, based on agency, respondeat superior, and non-delegable duty. Five Star Parking is vicariously liable for the acts and omissions of its agents and employees.

Paradigm subsequently instituted a separate suit for declaratory judgment, seeking a determination of its duty to defend The Men's Club for the claims made the basis of the *Butler* suit. The parties filed cross-motions for summary judgment. The trial court found that Paradigm had a duty to defend under the policy, and granted The Men's Club's motion for summary judgment. Paradigm thereafter perfected this appeal.

### Standard of Review

The appropriate standard to be followed when reviewing a summary judgment is well-established:

1. the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law;

2. in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency Clinic,* 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist] 1992, writ denied).

When both parties file competing motions for summary judgment and one is granted and the other denied, the reviewing court will determine all issues presented, including the order denying the losing party's motion. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). Where, as here, the summary judgment order does not specify the grounds upon which summary judgment was granted, the reviewing court will affirm the judgment if any of the theories advanced in the motion is meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

### Points of Error One and Two

■ As a preliminary matter, The Men's Club claims the appellate record is incomplete because Paradigm failed to include The Men's Club's response to Paradigm's reply filed with the trial court on April 12, 1995. For an issue to be properly before the trial court on a motion for summary judgment, it must be expressly presented to the court either by a written motion, answer or response to the motion. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *Knapp v. Eppright*, 783 S.W.2d 293, 295 (Tex.App.—Houston [14th Dist.] 1989, no writ). The Men's Club does not contend that Paradigm failed to include either the motion or the response to the motion for summary judgment in the record, nor does it indicate how the failure to include the response to the reply might render the record incomplete. We reject The Men's Club's assertion that Paradigm waived error by failing to present a complete record.

### *Duty to Defend*

■ The duty to defend an insured is based upon the terms of the insurance contract. A duty to defend arises if the plaintiff alleges facts which potentially state claims for which there is coverage. *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 272 (Tex.App.—Dallas 1992, writ denied); *Continental Casualty Co. v. Hall*, 761 S.W.2d 54, 56 (Tex.App.—Houston [14th Dist.] 1988, writ denied), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503

(1990). The duty to defend is determined from the face of the pleading, without reference to the truth or falsity of the factual allegations. *Heyden Newport Chemical Corp. v. Southern General Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965). The insurer is to compare the four corners of the complaint with the four corners of the insurance policy to determine if the allegations potentially fall within the coverage of the policy. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 118–19 (5th Cir.1983). The focus of the inquiry is the facts alleged; legal theories alleged are not determinative of the duty to defend. *See Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Maayeh v. Trinity Lloyds Ins. Co.*, 850 S.W.2d 193, 195 (Tex. App.—Dallas 1992, no writ).

■ In its first two points of error, Paradigm alleges the trial court erred in granting summary judgment in favor of The Men's Club and in denying its motion for summary judgment. Paradigm alleges that, as a matter of law, the liquor liability exclusion contained in the policy specifically excludes coverage for liquor-related incidents such as the one that forms the basis of the underlying *Butler* suit. The dispute as to whether the liquor liability exclusion relieves Paradigm of its duty to defend hinges upon whether the factual allegations of the underlying suit fall within the liquor liability exclusion of the policy. *Adamo*, 853 S.W.2d at 676. Paradigm contends it has no duty to defend because Butler's claims against The Men's Club, however pled, arise out of its provision of alcohol to Moraczewski and are therefore subject to the liquor liability exclusion. The Men's Club contends the allegations of negligent hiring and supervision of the valet parking service and vicarious liability for the acts or omissions of Five Star potentially state claims for which there is coverage and do not fall within the policy exclusion.

Texas courts have addressed similar issues in *Abe's Colony Club, Inc. v. C & W Underwriters, Inc.*, 852 S.W.2d 86 (Tex.App.—Fort Worth 1993, writ denied) and *Thornhill v. Houston General Lloyds*, 802 S.W.2d 127, 130 (Tex.App.—Fort Worth 1991, no writ). *Abe's Colony Club* involved a vehicle accident

caused by Carl Williams, an intoxicated patron of Abe's Colony Club. The plaintiff in the underlying lawsuit alleged that after Williams became intoxicated at Abe's Colony Club, *the club, its agents and employees*[2] permitted him to leave the bar and drive a car when they knew or should have known he was a threat to public safety. *Abe's Colony Club*, 852 S.W.2d at 89. The plaintiff contended the club was negligent in

1. [f]ailing to determine, discovery [sic] or notice that Carl Williams was intoxicated;

2. [c]ontinuing to serve Carl Williams after he was intoxicated;

3. *[f]ailing to instruct, supervise, or train its employees in how to discover, or deal with, intoxicated patrons;*

4. [f]ailing to offer alternative transportation to Carl Williams after it was known or should have been known that Carl Williams was intoxicated.

*Id.* (emphasis added). The court considered these allegations in light of the policy language, which excluded coverage for loss due to:

(h) **bodily injury or property damage** for which the **insured** or his indemnitee may be held liable:

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

(i) by, or because of the violation of any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) *by reason of the selling, serving or giving of any alcoholic beverage* to a minor *or to a person under the influence of alcohol or which*

*causes or contributes to the intoxication of any person.*

*Id.* (emphasis in opinion).

The insured argued that the allegations relating to the failure to properly train and supervise its employees fell outside of the liquor liability exclusion. The Fort Worth Court of Appeals rejected this argument, however, "because each of these allegations *arises out of* the business of selling or serving alcohol to a person under the influence of alcohol or which causes or contributes to the intoxication of any person." *Id.* at 89 (emphasis in opinion)(citing *Thornhill*, 802 S.W.2d at 130). The court held that the liquor liability exclusion "plainly and specifically negates *coverage for liability arising out of the business of selling or serving alcohol.*" *Id.* (emphasis in opinion)(citing *Thornhill*, 802 S.W.2d at 130). Because the complaint fell within the liquor liability exclusion, the court concluded, there was no duty to defend under the policy. *Id.*

In *Thornhill*, the court construed an identical policy exclusion in light of the plaintiffs' allegations that Thornhill's establishment was negligent, *inter alia*, in failing to properly supervise and train their employees with regard to the sale of alcoholic beverages. *Thornhill*, 802 S.W.2d at 130. The Thornhill defendants asserted that their alleged failure to supervise and train employees provided an alternative ground for potential liability under the policy separate and apart from the sale of alcoholic beverages. The court disagreed, noting that the crux of every allegation against the insured was its "business of selling or serving alcoholic beverages." *Id.* The court held that the allegation of failure to properly train or supervise employees with regard to the sale of alcoholic beverages did not cause the complaint to fall outside the scope of the exclusion. *Id.; see also Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 314 (5th Cir.1993). Because the policy specifically excluded coverage for liability arising out of the business of selling

**2.** Paradigm claims that, because the plaintiff's allegations in *Abe's Colony Club* included the "agents and employees" of the club, the issue of vicarious liability was raised and the case is

dispositive. However, the court never discussed vicarious liability but instead focused on the factual allegations contained in the petition.

or serving alcohol, the court concluded the insurer had no duty to defend. *Id.*

The Men's Club argues that *Abe's Colony Club* and *Thornhill* are distinguishable from the present case because Butler alleged that The Men's Club is vicariously liable for the acts or omissions of Five Star Parking, an independent entity. Specifically, The Men's Club claims this case is distinguishable because the Butler suit is against two separate and distinct corporations who are insured by separate carriers, represented by separate counsel, and who have separate and distinct common law contractual duties to patrons or customers of the club. Because the valet service is a "non-server" of alcohol, The Men's Club contends, the claims against Five Star are separate and distinct from the claims against The Men's Club for negligent provision of alcohol. The Men's Club cites *Riley v. Triplex Communications, Inc.*, 874 S.W.2d 333 (Tex.App.—Beaumont 1994), *rev'd*, 900 S.W.2d 716 (Tex.1995), *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392 (Tex.1991), and the Restatement (Second) of Torts § 24A (1965),[3] for the proposition that, independent of Dram Shop liability, a server of alcoholic beverages may be held jointly and severally liable with a non-server of alcoholic beverages under the common law.

Whether or not the underlying suit is premised on a theory of vicarious liability for the actions of a separate entity, the parties agree that it is not the cause of action alleged that is determinative "but the *facts* giving rise to the alleged actionable conduct." *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d at 676 (emphasis added). In determining the applicability of the exclusion, we must focus on the origin of the damages and not the legal theories asserted. *Id.* at 677. An examination of Butler's petition reveals that each and every allegation contained therein arises out of the business of selling or serving alcohol to or causing or contributing to the intoxication of Moraczewski. It is undisputed that Moraczewski's impaired condition resulted from his consumption of alcoholic beverages at The Men's Club. Nevertheless, The Men's Club argues that Paradigm has a duty to defend because the allegation of failure to hire and select a competent valet service is not dependent upon its causing or contributing to the intoxication of any person. This might be true depending upon the nature of the valet service's alleged incompetence. For example, if the valet service had negligently injured Butler while parking cars, the allegation of failure to hire a competent valet service would not be dependent upon The Men's Club's causing or contributing to the intoxication of any person. However, Butler's claim that The Men's Club negligently hired and supervised Five Star actually stems from the failure of the parking attendant to monitor the intoxication of patrons who had consumed alcohol at the club. If we were to consider Five Star's status as a separate entity a determinative factor, a bar could simply hire a separate company to monitor the intoxication of its patrons and thereby trigger a duty to defend under a policy that excludes coverage for causing or contributing to the intoxication of any person. Regardless of whether the persons charged with monitoring the intoxication of patrons were employees, as in *Abe's Colony Club* and *Thornhill*, or independent contractors, such as Five Star, the allegations in Butler's petition arise out of The Men's Club's business of selling or serving alcohol and do not fall outside the scope of the policy exclusion.

*Ambiguity*

◼ As an alternative basis to affirm the summary judgment, The Men's Club claims that the policy coverages are ambiguous and must be construed in favor of the insured. Specifically, The Men's Club argues that Products/Completed Operations is a separate

---

3. The Men's Club, in response to this court's granting of Paradigm's motion for rehearing, claims the summary judgment must be affirmed on unassigned error because Paradigm did not discuss the independent basis of liability raised by The Men's Club under the Restatement of Torts. Regardless of the theory of independent liability asserted, this court must focus on the factual allegations of the underlying suit to determine whether there is a duty to defend under the policy. We therefore reject The Men's Club's argument that the case must be affirmed on unassigned error.

and distinct line of coverage (for damage or harm occurring away from the premises caused by defective work or products of the insured)[4] to which the liquor liability exclusion does not apply.

The policy at issue contained seven endorsements, six of which expressly modified insurance provided under, *inter alia*, the "Commercial General Liability Coverage Part" and the "Products/Completed Operations Liability Coverage Part." The Liquor Liability Exclusion endorsement, on the other hand, states only that it modifies insurance provided under the "Commercial General Liability Coverage Part." The Men's Club claims that, by failing to list Products/Completed Operations Liability Coverage as a separate coverage to which the Liquor Liability Exclusion endorsement applies, Paradigm negated the liquor liability exclusion as to products/completed operations.

The Men's Club's entire argument is premised upon the assumption that Products/Completed Operations coverage is separate and apart from Commercial General Liability coverage. Pointing to the declarations page of the policy, The Men's Club asserts that, because the Limits of Insurance section lists the Products/Completed Operations Aggregate Limit separately from the General Aggregate Limit, Products/Completed Operations is a separate and distinct line of coverage. However, nowhere in the policy is there a separate grant of coverage for Products/Completed Operations. Upon review of the terms of the policy, it is clear that the coverage for hazards arising out of Products/Completed Operations is merely a part of the coverage provided under the Commercial General Liability Coverage. There is no provision of coverage other than under the Commercial General Liability Coverage, and there is not a separate grant of coverage for Prod-

ucts/Completed Operations Hazard. As the Liquor Liability Exclusion endorsement expressly modifies insurance provided under the Commercial General Liability Coverage Part, specifically Coverage A, it necessarily applies to the Products/Completed Operations contained within that coverage.

*Waiver*

■■■ The Men's Club finally argues that summary judgment was proper because Paradigm waived its policy defenses when it assumed the defenses of Stevens and Fairchild prior to sending a reservation of rights letter. It is undisputed that Paradigm failed to send a reservation of rights letter to Stevens and Fairchild until fifteen days after an answer was filed on their behalf. However, Paradigm contends The Men's Club failed to create a fact issue regarding waiver because there was no summary judgment proof of harm or prejudice to the defense of Stevens and Fairchild as a result of this two week delay.[5]

■■■ In Texas, the doctrines of waiver and estoppel cannot be used to create insurance coverage when none exists by the terms of the policy. *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 603 (Tex.1988). An exception to this general rule has been recognized when an insurer, with knowledge of facts indicating noncoverage, assumes the defense of its insured without obtaining a non-waiver agreement or a reservation of rights. *Farmers Texas County Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 522 (Tex.Civ. App.—Austin 1980, writ ref'd n.r.e.). In such a situation, the insurer waives all policy defenses, including noncoverage, or it may be estopped from raising them. *Id.* Texas courts have generally required a showing that the insured was harmed by the insurer's conduct in assuming the insured's defense

---

4. The definition section of the policy provides: " 'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'...." An endorsement to the policy, entitled "Products/Completed Operations Hazard Redefined," expanded the products-completed provision to include incidents that occur both on and off the insured's premises.

5. Because waiver is an affirmative defense to Paradigm's denial of coverage, The Men's Club had the burden of proof to establish each element of its affirmative defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

without a reservation of rights or non-waiver agreement. *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 552 (Tex.App.—Dallas 1990, writ denied).

Paradigm sent a reservation of rights letter to Stevens and Fairchild fifteen days after an answer was filed on their behalf. At that point, Stevens and Fairchild had notice of a potential conflict of interest with respect to their defense. The Men's Club offered no summary judgment proof raising a fact issue with regard to any harm Stevens or Fairchild might have suffered during the two weeks prior to their receipt of the reservation of rights letter. Accordingly, under these facts, The Men's Club failed to raise an issue of waiver.

We find that the trial court erred in granting The Men's Club's motion for summary judgment and in denying Paradigm's motion for summary judgment. Accordingly, Paradigm's first and second points of error are sustained.

### Attorney's Fees

■ Paradigm claims the trial court erred in denying recovery for attorney's fees incurred in connection with the declaratory judgment action. Paradigm's motion for summary judgment encompassed a claim for attorney's fees, and was supported by the affidavit of Glennis E. Sims, the attorney of record in the declaratory judgment action. The uncontroverted summary judgment proof showed that the attorney's fees reasonably incurred in connection with the suit through judgment totaled $11,250.00, and that, in the event of an appeal, reasonable and necessary attorney's fees would be $5,000.00. Paradigm's attorney described the time involved, the nature of the services that were rendered, and the reasonableness of the fees charged. The testimony is not contradicted by any other witness or attendant circumstances, and it is clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cast suspicion thereon. *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990) (citing *Cochran v. Wool Growers Central Storage Co.,* 140 Tex. 184, 166 S.W.2d 904, 908 (1942)). Moreover, The Men's Club does not contest or contradict the reasonableness of the attorney's fees on appeal. In such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so, the appellate court may award attorney's fees as a matter of law. *Id.* Accordingly, we render judgment in favor of Paradigm for attorney's fees in the amount of $16,250.00.

### Point of Error Three

In its third point of error, Paradigm alleges the trial court erred in denying its objections and motion to strike The Men's Club's exhibits. The Men's Club filed with the trial court an affidavit from Raphael Moraczewski, an affidavit from David A. Fairchild, and a letter from Joseph A. Wilkerson. Paradigm contends these three items are extrinsic evidence which should not have been considered in reviewing the cross-motions for summary judgment. Because we have found that as a matter of law, based upon the terms of the policy and the allegations in Butler's petition, Paradigm has no duty to defend, there is no need to address Paradigm's third point of error.

Accordingly, we reverse the judgment of the trial court in favor of The Men's Club, and render judgment in favor of Paradigm on the ground that it has no duty to defend under the policy based upon the claims asserted in the underlying suit. Judgment is rendered in favor of Paradigm for attorney's fees in the amount of $16,250.00.

CANNON, Justice (Retired), dissenting.

I respectfully dissent. Butler's petition asserts a cause of action against The Men's Club that does not depend upon The Men's Club causing or contributing to the intoxication of any person; the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages. Butler's allegation that the Men's Club failed to hire and select a competent valet parking service is not dependent upon its causing or contributing to the intoxication of any person.

The majority relies upon *Abe's Colony Club, Inc. v. C & W Underwriters, Inc.*, 852 S.W.2d 86, 89 (Tex.App.—Fort Worth 1993, writ denied) and *Thornhill v. Houston General Lloyds*, 802 S.W.2d 127, 130 (Tex. App.—Fort Worth 1991, no writ) in holding that under the terms of its policy, Paradigm has no duty to defend. However, both *Abe's* and *Thornhill* are distinguishable from this case. In both cases, each and every allegation against the insured related to the business of selling or serving alcoholic beverages.

In the instant case, however, Butler's allegation in her petition that related to the valet service is not related to the business of selling or serving alcoholic beverages. The Men's Club provides a service to *all* its patrons through the valet service which is in no way related to its business of selling alcohol. Any person can valet park his automobile, without regard to whether alcoholic beverages have been consumed at the club. The service provided by the Five Star valet company is entirely independent of The Men's Club's business of selling and serving alcohol.

Because I believe this case is distinguishable from *Abe's* or *Thornhill,* I respectfully dissent.