**HOUSTON VILLAGE BUILDERS, INC., Appellant,**

v.

**William Craig FALBAUM and Jennifer P. Falbaum, Appellees.**

**In re Houston Village Builders, Inc., Relator.**

**Nos. 14–01–01005–CV, 14–02–00443–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 23, 2003.

Rehearing Overruled May 22, 2003.

C. Henry Kollenberg, Houston, for appellant.

James T. Evans, Victoria Fair Woo, Evans Law Office, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

The trial court vacated an arbitration award based on "evident partiality" by the sole arbitrator. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(2)(A) (Vernon Supp.2002). The court concluded the arbitrator exhibited evident partiality by failing to disclose information that he was under a duty to disclose. The prevailing party in the arbitration proceeding brought both an interlocutory appeal and a petition for writ of mandamus. We affirm the trial court's order and deny the petition.

### Factual and Procedural Background

In 1996, William and Jennifer Falbaum purchased a new home from Houston Village Builders, Inc. After discovering significant foundation problems, the Falb-aums filed suit against Village Builders, alleging breach of contract, breach of express and implied warranties, and DTPA violations. As required by the parties' purchase agreement, the dispute was submitted to binding arbitration subject to the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA").

The AAA provided the Falbaums and Village Builders a list of ten potential arbitrators with a short résumé for each. After each side was given an opportunity to strike three of the ten candidates, the AAA selected an attorney, Stephen Paxson, to be the sole arbitrator (the "Arbitrator"). The Arbitrator's résumé states that the majority of his practice is in the construction area, "primarily representing general contractors, builders, developers, designers, owners, and sub and specialty contractors." His résumé also notes he is a member of the Greater Houston Builders Association ("GHBA") and the National Association of Home Builders. Under the heading "Publications and Speaking Engagements," the résumé identifies two 1998 speeches and a 1993 article in the *Texas Bar Journal* titled "Builder Liability: The Implied Warranties of Good Workmanship and Habitability and the Builder's Statute of Repose."

On January 10, 2001, the Arbitrator sent a letter to the AAA's case manager providing certain disclosures. Among other things, this letter mentions the Arbitrator's membership in the GHBA, which he identifies as a trade association of "approximately 1350 corporate, business and professional members involved in the residential construction industry." The Arbitrator further notes in his letter that both Village Builders and its parent company, Lennar Homes, are also members of the GHBA. This letter states that because of his GHBA membership, the Arbitrator has

met an individual associated with Lennar Homes. The letter then states, "Neither my firm, nor any prior law firm of which I have been a member, have represented Village Builders or Lennar Homes." It concludes by stating, "I am unaware of any potential conflicts or other disclosures that would need to be made to the parties." The Arbitrator's letter was forwarded by the AAA to both parties.

The arbitration hearing occurred on April 25, 2001. On May 17, the Arbitrator issued an award that the Falbaums take nothing and that they pay $235.50 in administrative fees and expenses to Village Builders. Shortly thereafter, the Falbaums' counsel learned that, in addition to being a member of the GHBA, the Arbitrator may have had an attorney-client relationship with the GHBA. The Falbaums filed a motion to vacate the award under the Texas Arbitration Act on grounds of "evident partiality" by the Arbitrator. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(2)(A).[1] Village Builders responded to the motion to vacate and filed a motion to adopt the arbitration award. *See id.* § 171.087. On August 14, the trial court held a hearing, at which the Arbitrator and two other witnesses (one by deposition) testified. The trial court granted the Falbaums' motion and vacated the arbitration award.

### Evident Partiality

■ In granting the Falbaums' motion to vacate the award, the trial court concluded that the Arbitrator's failure to disclose certain information created evident partiality, requiring the court to vacate the award. Under the Texas Arbitra-

tion Act, an arbitration award must be vacated if a party's rights were prejudiced by evident partiality by a neutral arbitrator. *See id.* § 171.088(a)(2)(A). In *Burlington Northern Railroad Co. v. TUCO Inc.*, 960 S.W.2d 629 (Tex.1997), the Texas Supreme Court set forth the following standard for establishing evident partiality of a neutral arbitrator based on the arbitrator's failure to disclose:

> [W]e hold that a prospective neutral arbitrator selected by the parties or their representatives exhibits evident partiality if he or she does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality. We emphasize that this evident partiality is established from the *nondisclosure itself,* regardless of whether the nondisclosed information necessarily establishes partiality or bias.

*Id.* at 636 (emphasis in original). Significantly, a potential arbitrator's required disclosures are not limited to direct financial or business relationships; instead, the court concluded that "parties should have access to all information that might reasonably affect the potential arbitrator's impartiality." *Id.* at 637. In this case, the trial court concluded that the Arbitrator should have disclosed (1) his attorney-client relationship with the GHBA, (2) his involvement in preparing amicus briefs relating to changes in the law affecting claims pleaded by the Falbaums, and (3) his testimony before the Texas Legislature relating to certain legal theories on which the Falbaums relied.

### Applying the *TUCO* Standard

■ We begin by addressing the claim that the *TUCO* standard, whereby nondis-

---

1. The relevant portion of section 171.088 states:
 (a) On application of a party, the court shall vacate an award if:
 . . .

 (2) the rights of a party were prejudiced by:
 (A) evident partiality by an arbitrator appointed as a neutral arbitrator. . . .
 TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a).

closures alone can establish evident partiality, does not apply in this case because the Arbitrator was selected by the AAA, not the parties. In *TUCO*, the court expressly noted that it was adopting a standard only for situations where "the parties select their arbitrators." *Id.* Later in its opinion, the court distinguishes a case out of the Tenth Circuit Court of Appeals because the neutral arbitrator in that case was selected by the AAA, and thus it did not present a case "where parties are selecting their arbitrators." *Id.* at 638 (discussing *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140 (10th Cir.1982)). In *Ormsbee*, however, the parties' agreement simply called for the AAA to select the neutral arbitrator, and there is no indication the parties had any veto power over that selection. In this case, the parties were permitted to strike up to three arbitrators from a list of ten before the selection was made. This case therefore presents a situation where, as in *TUCO*, parties need access to all relevant information to aid their participation in the selection process. *See TUCO*, 960 S.W.2d at 636. Accordingly, we conclude this case falls within the category of cases in which the parties select their arbitrator, and thus the *TUCO* standard applies.

Even if we were to find that the parties did not strictly "select" their arbitrator in accordance with the facts in *TUCO*, we believe the Arbitrator would be under the same duty to disclose. In *Mariner Financial Group, Inc. v. Bossley*, 79 S.W.3d 30 (Tex.2002), all three arbitrators were selected by an administrator from the National Association of Securities Dealers. In reviewing the evidence as to whether one of the arbitrators was evidently partial, the Texas Supreme Court cited *TUCO* and noted that the arbitrator had a duty to disclose nontrivial relationships known to him that might objectively create a reasonable impression of his partiality. *See Mariner Financial*, 79 S.W.3d at 32–33. Thus, *Mariner Financial* apparently extends the *TUCO* standard to *all* neutral arbitrators, regardless of the method for their selection. *See id.; see also id.* at 35 ("It is well-established ... that a neutral arbitrator has a duty to disclose dealings of which he or she is aware that might create an impression of possible bias.") (internal quotations omitted).

Because the Arbitrator was selected to serve as a neutral arbitrator, we conclude he was under a duty to disclose facts within his knowledge that might, to an objective observer, create a reasonable impression of his partiality. If the evidence showed he failed to disclose such facts, the nondisclosure establishes evident partiality. *See TUCO*, 960 S.W.2d at 636.

### The Arbitrator's Relationship with the GHBA

In its motion to vacate, the Falbaums argued the Arbitrator failed to disclose that, at the time of the arbitration, he served as counsel to the GHBA, a trade association of homebuilders. Both Village Builders and its parent company, Lennar Homes, are members of the GHBA. In its findings of fact, the trial court found that the Arbitrator "has had a long-term attorney-client relationship with the GHBA." Village Builders does not challenge this finding. Instead, it contends the Arbitrator was under no duty to disclose this representation, and even if he was, he satisfied this duty. Alternatively, Village Builders claims the Falbaums may not complain about the Arbitrator's alleged nondisclosure because the Falbaums could have discovered this information, yet they made no attempt to investigate the facts.

### *The Arbitrator's Duty to Disclose*

■ Village Builders first argues the Arbitrator was not required to disclose his

representation of the GHBA because he was under no duty to identify specific individuals or entities he has represented for whom he might have advocated positions contrary to the arguments raised by the parties in this case. However, the Arbitrator's undisclosed relationship with the GHBA raises concerns for reasons other than legal positions he may have advanced on the trade association's behalf. The evidence showed that, at the time of the arbitration, the Arbitrator was in a current and long-standing attorney-client relationship with a trade association of which both Village Builders and Lennar Homes were members. Kathryn Wood, the GHBA's in-house counsel, testified by deposition that the Arbitrator has "an ongoing relationship" with the GHBA as "one of [its] legal counsel." According to Wood, she would contact the Arbitrator directly for advice or assistance on certain matters, including issues involving the Residential Construction Liability Act and implied warranties, issues that were undeniably raised in the arbitration proceeding.

 Although the Arbitrator did not have a direct attorney-client relationship with Village Builders or Lennar Homes, his relationship with the GHBA can be compared to that of an arbitrator who represents the parent company of one of the parties to an arbitration. In *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir.1994), a case cited with approval by our supreme court in *TUCO*, the arbitrator's law firm had previously represented a parent company of one of the parties to the arbitration. *Schmitz*, 20 F.3d at 1044. Despite the absence of any suggestion that the parent company controlled the actions of the subsidiary, the Ninth Circuit Court of Appeals concluded that the arbitrator's firm's prior representation of the parent company "is likely to affect impartiality or may create an appearance of partiality." *Id.* at 1049. In this case, the Arbitrator's connection to the GHBA is stronger than the connection between the arbitrator and the parent company in *Schmitz*; here, the Arbitrator's representation was personal and ongoing at the time of the arbitration. Furthermore, it is not unreasonable to suggest that someone in the Arbitrator's position might be influenced into ruling in favor of a trade-association member to protect his status as the association's counsel. Although the record is silent as to whether Village Builders or Lennar Homes actually had the authority or ability to influence the GHBA's decisions regarding selection of outside counsel, the test we must apply requires only that an objective observer would believe the undisclosed relationship *might* create an *impression* of partiality or bias.[2] *See TUCO*, 960 S.W.2d at 636.

Village Builders nevertheless argues that the Arbitrator's relationship with the GHBA cannot support vacation of the arbi-

---

2. The proper test is not whether the undisclosed information would, in fact, create the appearance of bias. Rather, the court must determine whether an objective observer would believe the information *might* create that appearance. While we acknowledge that this case presents a close call, the supreme court has made it clear that potential arbitrators should err in favor of full disclosure. *See TUCO*, 960 S.W.2d at 637.

The dissent argues that it would be too speculative for an objective observer to conclude that the Arbitrator might think the GHBA had any interest in the outcome of the arbitration. However, the record shows that, within the last three years, the Arbitrator worked on at least two amicus briefs that were filed with the Texas Supreme Court on behalf of the GHBA. In both cases, the GHBA sided with a homebuilder and sought to reverse a judgment entered in favor of a purchaser. Furthermore, these cases obviously related to issues raised in this arbitration, as the Arbitrator cited and distinguished both of the appellate-court opinions in his written award.

tration award, citing *United States Wrestling Federation v. Wrestling Division of AAU, Inc.*, 605 F.2d 313 (7th Cir.1979). In that case, the arbitrator failed to disclose that he and his law firm had significant connections to Northwestern University. Northwestern was a member of the NCAA, which was affiliated with the USWF, the prevailing party in the arbitration. The Seventh Circuit Court of Appeals held that the arbitrator's relationship with the USWF was too remote to require the arbitration decision to be set aside. *Id.* at 320. Unlike this case, neither the association (the NCAA) nor the individual member (Northwestern) represented by the arbitrator's firm was a party to the arbitration. Furthermore, we believe that an arbitrator's representation of a trade association creates a much stronger potential for partiality in an arbitration involving one of the association's members than if the arbitrator represented a single member of an association and the association was a party in the arbitration. We conclude that *United States Wrestling Federation* is distinguishable from this case.

Under these facts, we conclude that, to an objective observer, the Arbitrator's ongoing service as counsel for the GHBA might create a reasonable impression of partiality toward Village Builders and Lennar Homes, two sizeable members of that trade association. Accordingly, the Arbitrator was required to disclose the existence of his ongoing attorney-client relationship with the GHBA.

### The Arbitrator's Alleged Disclosures

■ Next, Village Builders argues that, even if the Arbitrator had a duty to disclose his attorney-client relationship with the GHBA, he satisfied this duty through (1) the listing on his AAA résumé of a 1993 *Texas Bar Journal* article identifying him as counsel to the GHBA's board of di-

rectors and (2) his alleged statement at the beginning of the arbitration hearing that he "worked with" the GHBA.

The Arbitrator's AAA résumé, submitted to the parties along with the list of potential arbitrators, includes a reference to a 1993 article published in the *Texas Bar Journal*. At the end of the article, there is a short biography stating that the Arbitrator "serves as counsel to the board of directors of the Greater Houston Builders Association." Village Builders claims that by citing this article in his résumé, the Arbitrator sufficiently disclosed his ongoing attorney-client relationship with the GHBA. We disagree. Despite specifically mentioning his membership in the GHBA both on his résumé and in his disclosure letter, the Arbitrator never informed the parties that he served as the association's attorney. Instead, Village Builders relies on a form résumé listing an eight-year-old article that contained the relevant information in a single endnote. This does not satisfy an arbitrator's affirmative duty to disclose. Even if we were to find that it did, this article discloses only that the Arbitrator served as counsel to the GHBA's board in some unspecified capacity in 1993. This purported disclosure is not sufficient to inform the parties that the Arbitrator was in an attorney-client relationship with the GHBA at the time of the arbitration.

Village Builders also contends the Arbitrator disclosed the existence of his attorney-client relationship with the GHBA orally at the arbitration hearing. The Arbitrator testified that, at the beginning of the hearing, he told the parties that he "worked with" the GHBA. Even if we assume the trial court believed this testimony, we conclude the Arbitrator's statement would not satisfy his duty to disclose. At best, the Arbitrator's statement is ambiguous as to whether he was ever the GHBA's

attorney. As a member of the GHBA, he could have "worked with" the association in some capacity other than as its attorney. The Arbitrator's statement certainly did not inform the parties of his current and ongoing attorney-client relationship with the GHBA. We conclude the Arbitrator failed to disclose his attorney-client relationship with the GHBA.

### The Falbaums' Failure to Investigate

 Finally, Village Builders argue that the Falbaums' complaint should fail because they could have discovered the Arbitrator's attorney-client relationship with the GHBA on their own but failed to investigate. However, as the supreme court makes clear in *Mariner Financial*, determining whether an arbitrator satisfied the disclosure duty does not turn on what facts are available to the complaining party:

> [T]he concurrence would excuse even an arbitrator's knowing concealment of a relationship evidencing partiality as long as there are facts from which the arbitrator can presume the complaining party knew it too. But the whole purpose of an arbitrator's duty to disclose is to avoid this very type of speculative presumption and let the parties to the arbitration make the call.

*Mariner Financial,* 79 S.W.3d at 35; *see also id.* at 36 (Owen, J., concurring) ("What the losing party to an arbitration knew or should have known does not answer the question of whether an arbitrator's nondisclosure exhibits evident partiality."). Thus, regardless of whether the Falbaums knew or should have known of the Arbitrator's attorney-client relationship with the GHBA, the Arbitrator's fail- ure to disclose this relationship is evidence of his partiality.

To the extent Village Builders contends the Falbaums' failure to investigate constitutes a waiver of their evident-partiality claim, we note that in *Mariner Financial,* the supreme court expressly declined to consider whether parties to an arbitration have a duty to investigate. *Id.* at 33. Furthermore, waiver is an affirmative defense, on which Village Builders had the burden of proof. *See Paradigm Ins. Co. v. Texas Richmond Corp.,* 942 S.W.2d 645, 652 n. 5 (Tex.App.-Houston [14th Dist.] 1997, writ denied); *El Paso Natural Gas Co. v. American Petrofina Co. of Tex.,* 733 S.W.2d 541, 553 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). Village Builders failed to establish that a reasonable investigation would have led the Falbaums to discover the Arbitrator's ongoing attorney-client relationship with the GHBA. As we note above, the information contained in the 1993 *Texas Bar Journal* article would not have apprised the Falbaums that the Arbitrator had an ongoing attorney-client relationship with the GHBA at the time of the arbitration. Thus, we reject Village Builders's complaints about the Falbaums' alleged failure to investigate.

### Conclusion

As a prospective neutral arbitrator, the Arbitrator had a duty to disclose to the parties that he had an ongoing attorney-client relationship with the GHBA, a trade association of homebuilders of which Village Builders and Lennar Homes were members. The Arbitrator's failure to disclose this information exhibited evident partiality, which required the trial court to vacate the arbitration award.[3] We affirm

---

3. Because the Arbitrator's failure to disclose his attorney-client relationship with the GHBA was itself sufficient to support the trial court's judgment vacating the arbitration award, we need not address the other nondisclosures found by the trial court.

the trial court's judgment and deny the petition for writ of mandamus.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

The "evident partiality" analysis necessarily entails a fact-intensive inquiry, and in this area of the law, bright-line legal rules are sparse, and analogous cases are difficult to find. *Mariner Fin. Group, Inc. v. Bossley,* 79 S.W.3d 30, 34 (Tex.2002). Given the facts of this case, the court errs in concluding that the arbitrator, an attorney, exhibited evident partiality by failing to disclose an attorney-client relationship with a trade association which was neither a party nor a witness and whose relationship with the arbitrator could not reasonably have been perceived as creating an impression of partiality in the eyes of an objective observer. *See Burlington N. R.R. Co. v. TUCO, Inc.,* 960 S.W.2d 629, 636–37 (Tex.1997).

Though our case law gives relatively little guidance on where to draw the line on disclosure of indirect ties such as the one at issue here, it is clear that not every relationship, connection, or interest is subject to disclosure under the *TUCO* standard. *See Mariner Fin. Group, Inc.,* 79 S.W.3d at 32 (quoting *TUCO* as stating a "neutral arbitrator need not disclose relationships or connections that are trivial."). That is why it is so important for courts to scrutinize both the nature and the directness of the interest or relationship in determining whether disclosure is required.

Under *TUCO*'s objective test, "the consequences for nondisclosure are directly tied to the materiality of the unrevealed information." *Mariner Fin. Group, Inc.,* 79 S.W.3d at 32. To warrant vacatur of the arbitration award based on evident partiality, the arbitrator's connection to a party, its counsel, or a witness should be

material and strongly suggestive of partiality. *See Mariner Fin. Group, Inc.,* 79 S.W.3d at 33 (noting that the relationship in *TUCO* arose from a lucrative business referral to one of the arbitrators and thus was not trivial); *J.D. Edwards World Solutions Co. v. Estes, Inc.,* 91 S.W.3d 836, 844 (Tex.App.-Fort Worth 2002, pet. filed) (finding evident partiality where arbitrator failed to disclose attorney-client relationship with party to arbitration); *accord Texas Commerce Bank v. Universal Technical Inst. of Tex., Inc.,* 985 S.W.2d 678, 680–81 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). Here, the arbitrator, Stephen Paxson, had no undisclosed connection to any party, lawyer, or witness in the arbitration. The "unrevealed information" was an attorney-client relationship between Paxson and Greater Houston Builders Association ("GHBA"), a large trade association that was neither a witness nor a party and which had no cognizable interest in the arbitration.

Though our high court has adopted a very broad standard for arbitrator disclosures, the standard is not without limits and those limits are defined by reasonableness. *See TUCO, Inc.,* 960 S.W.2d at 636 (holding that a potential arbitrator should disclose facts that, to an objective observer, might create a *"reasonable* impression" of partiality; and "the parties must have access to all information which might *reasonably* affect the arbitrator's partiality.") (emphasis added). An outside observer might form any impression about the arbitrator's partiality, but unless the impression is a reasonable one to objective eyes, it will not support a finding of evident partiality. *See id.*

Because the reasonableness of an impression of partiality is dependent on whether the undisclosed information was material, the outcome in this case hinges

on the materiality of the Paxson–GHBA attorney-client relationship *vis-à-vis* the arbitration. *See Mariner Fin. Group, Inc.*, 79 S.W.3d at 32. As explained below, though additional facts not present here could have made that relationship material and thus made disclosure necessary under *TUCO*, this relationship in and of itself did not give rise to a reasonable impression of arbitrator partiality and thus did not require the arbitrator to disclose it.

Houston Village Builders, Inc. ("Village Builders") and its parent company, Lennar Homes are only two of approximately 1350 members of GHBA. Individual membership in an association of that size does not carry with it the rights, privileges, control, and influence typically enjoyed by an association's leadership, management, or elected board of directors. Consequently, an objective observer would not attribute any significant influence to an individual member, and thus could not reasonably conclude that two of GHBA's 1350 members could have such weight and influence by virtue of mere membership that the association's lawyer, while serving as an arbitrator in a non-GHBA dispute, might feel compelled to rule for them simply because they are members.

The Falbaums were not required to prove Paxson was actually biased in favor of Village Builders and Lennar Homes. *See TUCO, Inc.*, 960 S.W.2d at 636. But they must point to *something* that would have caused an objective observer to conclude that his impartiality might be compromised because he was GHBA's lawyer. *See id.* An objective observer could not conclude, *without speculating*, that it somehow would be better for GHBA (or Paxson) if one side prevailed. The impression of partiality must be reasonable and a reasonable impression is not based on speculation, conjecture or surmise, but on an objective view of the facts. *See TUCO, Inc.*, 960 S.W.2d at 636 (holding that the impression of partiality must be reasonable); *Briones v. Levine's Dept. Store, Inc.*, 446 S.W.2d 7; 10 (Tex.1969) (holding that a reasonable inference cannot be based on speculation).

The majority asserts that its conclusion is reasonable and not speculative because the record shows that Paxson represented GHBA in two unrelated cases that involved similar issues. Though the majority points to GHBA's interest in these cases, it does not explain how or why that interest is any indication of a GHBA interest in the Falbaums' dispute with Village Builders and Lennar Homes.[1] *The majority does not identify any reason it would or might be better for GHBA if either side prevailed, nor does the majority explain how or why GHBA might have an interest in seeing Village Builders or Lennar Homes prevail over the Falbaums in the arbitration.* Whatever position GHBA may have taken (or Paxson may have asserted on behalf of GHBA) in two other cases is no indication of a cognizable interest in an unrelated non-GHBA arbitration. GHBA had no stake in the subject matter of the arbitration, and the arbitration could not possibly have created any binding precedent for any other case. *See El Dorado Tech. Servs., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 321 (1st Cir.1992) ("It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions.") Because there was nothing to suggest to an objective observer that what might happen in the arbitration would or could have any implication for GHBA, it is pure speculation for the majority to conclude that GHBA's interest in two unrelated cases might give the impres-

1. *See ante,* op. at p. 33 n. 2 (majority opinion).

sion of Paxson's partiality in the arbitration.

Moreover, it is not reasonable to conclude that a 1350–member trade association or its lawyer would be concerned with the outcome of a non-association dispute between two individual members and third parties. Trade associations are typically concerned with furthering the interests of the industries they serve rather than advancing the private interests of their individual members. Nothing in the record suggests that GHBA is motivated by anything other than the collective interests of its members. There is certainly nothing that would suggest to an objective observer that GHBA provides support or assistance to individual members in connection with their individual disputes with third parties or that GHBA counseled, assisted, or supported Village Builders or Lennar Homes regarding their dispute with the Falbaums. It is not reasonable to attribute the views and desires of two individual members to a large association to which they belong. The views of an individual member do not necessarily reflect the views of an organization; and the goals and desires of an individual member do not necessarily reflect the interests and objectives of the organization. GHBA had no interest of any kind in the arbitration and there was no reasonable basis for an objective observer to conclude that its lawyer, while serving as an arbitrator in a non-GHBA dispute, would favor either side in the arbitration.

Though the majority does not suggest or identify any reason it would or might be better for GHBA if Village Builders and Lennar Homes prevailed in the arbitration, the majority implicitly attributes an "industry member should always win" mentality to GHBA. An objective observer would not do so. An objective observer would consider the nature and purpose of an organization like GHBA, and conclude that trade associations, which are typically concerned with promoting good industry practice, would condemn, not sanction, conduct of an industry member that fell below that standard. Consequently, an objective observer would not conclude, as the majority does, that a trade association that was a stranger to a builder-homeowner dispute might have an "interest" in it solely because it sided with builders in two other, unrelated cases. Applying that logic, one could just as easily resolve that an objective observer might conclude that the American Bar Association has an interest in seeing the lawyer prevail over the client in every legal malpractice case, or that the American Medical Association has an interest in seeing the doctor prevail over the patient in every medical malpractice case. Neither conclusion is reasonable. An objective observer would not conclude that GHBA had an interest in seeing the builder prevail over the homeowner in every residential construction case and would not conclude that GHBA had an interest in seeing Village Builders and Lennar Homes prevail over the Falbaums in this arbitration.

Nor would an objective observer conclude that Paxson's representation of GHBA in two unrelated cases might impact his impartiality as an arbitrator in the Falbaums' dispute with Village Builders and Lennar Homes. When an attorney dons an arbitrator hat, he takes an oath to consider only the evidence presented by the parties, to cast aside any personal opinions he might have, and to base his award on the applicable law and the facts before him. It is only when there is something which might cause an objective observer to reasonably question the arbitrator's ability to do so, that disclosure is required. *See TUCO, Inc.*, 960 S.W.2d at 636.

An objective view of the facts shows GHBA's *only* connection to the arbitration is that the arbitrator was one of the lawyers that performed legal work for the association. But the arbitrator's attorney-client relationship with GHBA is not tantamount to an attorney-client relationship with its individual members. In representing GHBA, Paxson does not represent each of its 1350 members. *See Sutton v. Mankoff,* 915 S.W.2d 152, 157–58 (Tex. App.-Fort Worth 1996, writ denied) (holding that an attorney retained to represent an entity does not represent its individual members). Though Paxson's client list includes . companies that are members of GHBA, he also has represented third parties *against* members of that association. The disclosure materials stated that Paxson concentrated 70% of his law practice in the construction area, primarily representing general contractors, builders, developers, designers, owners, subcontractors, and speciality contractors involving private commercial and residential projects. Common sense suggests that a lawyer who concentrates in the construction area and represents a host of *non-builders* as part of his legal practice, from time to time, would be adverse to builders who are members of GHBA, particularly given the size of the trade association. Thus, it would not be reasonable for an objective observer who knew these facts about Paxson's law practice to conclude that an arbitrator in Paxson's position

might be influenced into ruling in favor of a trade-association member merely "to protect his status as the association's counsel." [2] Nor would it be reasonable for an objective observer to draw this conclusion even if these facts had not been disclosed because in the context of a non-GHBA dispute, the GHBA membership of Village Builders and Lennar Homes does not reach the materiality threshold necessary to require disclosure of the arbitrator's attorney-client relationship with GHBA.

Apparently, the only published case in which a court has found evident partiality based on non-disclosure of an attorney-client relationship between the arbitrator and a non-party/non-witness is *Schmitz v. Zilveti,* 20 F.3d 1043, 1044 (9th Cir.1994). In that case, the non-party was the parent company of one of the parties to the arbitration and a former client of the attorney arbitrator's law firm. *See Schmitz v. Zilveti,* 20 F.3d 1043, 1044 (9th Cir.1994). The majority asserts that Paxson's attorney-client relationship with GHBA can be compared to that of the arbitrator in *Schmitz.* Noting the absence of any evidence in that case that the parent company controlled the actions of the subsidiary,[3] the majority states that the *Schmitz* court nevertheless concluded the arbitrator's firm's prior representation of the parent company was "likely to affect impartiality or [might] cre-

---

**2.** *Ante,* op. at p. 33.

**3.** *See id.* at 1043–49. *Schmitz* is silent as to whether the parent (non-party) controlled the actions of the subsidiary (party), but even if the facts showed that the parent corporation had no day-to-day control over operations of its subsidiary, by definition, the parent owned a controlling interest in the subsidiary's stock. *See United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (defining a parent corporation as a corporation that

controls the subsidiary through ownership of its stock); Bʟᴀᴄᴋ's Lᴀᴡ Dɪᴄᴛɪᴏɴᴀʀʏ 344 (7th ed. 1999) (defining "parent corporation" as "[a] corporation that has a controlling interest in another corporation (called a *subsidiary corporation*), usu. through ownership of more than one-half the voting stock"); *see also North Am. Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 120 (Tex.App.-Beaumont 2001, pet. denied) (stating that "control is part of the normal framework of a parent/subsidiary relationship").

ate an appearance of partiality." *Id.* at 1049.

This analogy to the facts of *Schmitz* is flawed because there are significant factual differences between this case and *Schmitz*. In *Schmitz,* the non-party (parent) had an ownership interest in a party to the arbitration—an interest that, by its very nature, gives rise to a relationship of control and influence. It is this relationship—and the financial interest it implicates—that supported evident partiality in *Schmitz*. An objective observer might form a reasonable impression that an arbitrator whose law firm served as counsel to a parent corporation (non-party) for thirty-five years might be biased in favor of that corporation's subsidiary (party). Thus, the *Schmitz* court was correct in finding evident partiality in that case. The facts presented by our record are notably different.

Here, there is nothing to show or even suggest any relationship of control or influence, or any financial interest, between any party or witness to the arbitration and GHBA (the arbitrator's client), or vice versa. Unlike the arbitrator in *Schmitz,* Paxson has never had an attorney-client relationship with one who was in a position of control or influence, by stock ownership or otherwise, with a party to the arbitration. GHBA has never had an ownership interest in Village Builders or Lennar Homes, nor has it ever had any equivalent control relationship or financial interest with or in these parties. Nor is there anything to suggest to an objective observer that Village Builders or Lennar Homes (parties) have any influence or control over GHBA (non-party) and, as previously noted, it would not be reasonable to infer such control or influence in this factual context.

Though Village Builders and Lennar Homes are GHBA members, there is nothing to suggest to an objective observer that either company or any of their employees then played (or anticipated playing) any role in GHBA's management, operation, or administration. Nor is there anything that would suggest that mere members of GHBA (who are not officers or employees of GHBA) had any past, current, or anticipated future involvement or voice in the selection or retention of GHBA's legal counsel. And, *unlike a scenario involving a parent and subsidiary where control and influence are apparent,* it would not be reasonable to conclude that Village Builders or Lennar Homes, only two of 1350 members, were in any position to impact or influence such decisions, or that either of these parties had any current or future influence or control over GHBA's attorney-client relationship with Paxson.

By concluding that an objective observer might form a reasonable impression "that someone in the Arbitrator's position might be influenced into ruling in favor of a trade-association member to protect his status as the association's counsel,"[4] the majority fails to credit an outside observer's objectivity and discernment. An objective observer bases his judgment on observable phenomena—something that is capable of being seen or noticed. In the absence of observable facts that would indicate that two members of a 1350-member association had some measure of control or influence over the association's lawyer or within the association itself, an objective observer could not form a reasonable impression that Village Builders or Lennar Homes would be in a position to impact the arbitrator's impartiality in a dispute that did not involve the association. If an objective observer formed the

---

4. *Ante,* op. at p. 33.

impression of partiality based solely on Paxson's ongoing service as counsel for GHBA, that impression would not be reasonable. The connection is simply too attenuated. Absent a nexus that would make the parties' GHBA membership material, disclosure of this non-party/non-witness attorney-client relationship was not required under *TUCO*. *See Mariner Fin. Group, Inc.*, 79 S.W.3d at 32.

If there were facts which would suggest to an objective observer that Paxson's financial interests were implicated by virtue of an attorney-client relationship with a non-party or non-witness, the analysis would change. Indeed, an objective observer might reasonably conclude that an attorney arbitrator might be partial to a party who is in a position to direct or influence his client's decisions regarding the attorney arbitrator's current or future legal business for the non-party. *See Mariner Fin. Group, Inc.*, 79 S.W.3d at 33 (noting that the relationship in *TUCO* grew out of "a lucrative business referral" to one of the arbitrators and thus was not trivial). An arbitrator's financial interest in securing or maintaining his non-party client's legal business would support evident partiality in a case involving an undisclosed relationship with a non-party client of the arbitrator. Thus, if there had been some reasonable basis for concluding that Village Builders, Lennar Homes, or their employees were involved in the decision-making for GHBA's attorney-client relationships, then Paxson's pecuniary interests would have been implicated and there would have been a basis for finding evident partiality. *See id.* But there is no reasonable basis for an objective observer to conclude that any pecuniary interests might have been implicated in this case. There is no evidence—not even an allegation—that Village Builders or Lennar Homes (or anyone affiliated with these parties) had or anticipated any involvement in GHBA's decisions to retain or select the association's legal counsel or in the association's decision to retain Paxson as one of its lawyers.

To summarize, though the presence of additional factors, such as Village Builders or Lennar Homes' participation in selection of counsel for the association or involvement in its management or administration, might compel the need to disclose the unrevealed information, the mere existence of this non-party/non-witness attorney-client relationship in and of itself would not cause an objective observer to reasonably doubt Paxson's impartiality. *See TUCO, Inc.*, 960 S.W.2d at 636. Nor does the non-disclosure of the Paxson–GHBA attorney-client relationship, standing alone, suggest that Paxson was concealing something important or material concerning his impartiality in a non-GHBA dispute.

This case brings into sharper focus the tension between attaining full and complete disclosure while, at the same time, avoiding the pitfalls and impracticalities of a system that, in effect, would require the arbitrator to make immaterial disclosures and impose very serious consequences on the parties if he failed to do so. Achieving the former at the expense of the latter encourages litigation and unnecessarily weakens the finality of arbitration.

Ideally, the disclosure process should be both meaningful and practical, undergirding the ease, efficiency, and finality that has traditionally characterized arbitration and made it a desirable alternative to litigation. The strong public policy favoring arbitration could be frustrated if attorney arbitrators are compelled to disclose attorney-client relationships with non-parties and non-witnesses that have only tenuous, indirect, immaterial, or remote connections to the proceeding or the parties. *TUCO* and *Mariner* do not appear to reach that far.

Casting such a wide net has many negative implications for both the arbitration process and the parties who choose it as a means of resolving their disputes. Potential arbitrators could easily overlook a remote, peripheral, or indirect relationship with a non-party/non-witness group, giving losing parties an easy means of asserting a post-award challenge based on "unrevealed information." As a result, many an arbitration award could be left hanging by a thread. Given the burdens that accompany compliance with such a sweeping and unforgiving disclosure rule, some potential attorney arbitrators might be reluctant to serve, not only because of the breadth of the undertaking and significant potential for error, but also because of the confidential and sensitive nature of peripheral relationships that arguably might fall within the broad net of required disclosures.[5] The unwelcome result is a disincentive for parties to choose arbitration and for lawyers to serve as arbitrators.[6]

Moreover, an overly broad application of the *TUCO* standard might actually muddy the waters for parties who are trying to make informed decisions about potential arbitrators. For example, under the majority's interpretation of *TUCO*, potential attorney arbitrators might reasonably seek to guard against any future challenge to their arbitration awards by producing long and comprehensive disclosure lists revealing all sorts of remote, indirect, and peripheral non-party/non-witness relationships. As a result, the truly important disclosures might get obscured or overshadowed amid the inconsequential information and the tenuous ties and connections. Paradoxically, though disclosures are meant to clarify and assist in the selection of arbitrators, if not made judiciously, they have the potential to render the entire disclosure process meaningless.

Parties often select arbitration based on its promise of an expedient, inexpensive, and final result. If peripheral connections of the sort at issue here are sufficient to trigger evident partiality, court intervention in the arbitration process will almost certainly increase, undermining the ease, efficiency, and finality arbitration is supposed to provide. See *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995) (stating that "the fundamental purpose of arbitration [is] to provide a rapid, less expensive alternative to traditional litigation"). Parties who bargain for arbitration are deserving of these benefits. Of course, they are also entitled to an impartial decisionmaker and a fair process.

Parties cannot be assured a fair process without meaningful arbitrator disclosures. They are the checks and balances for the integrity of the arbitration process, ensuring the parties' confidence in the neutrality and impartiality of the arbitrator who will decide their dispute. Unquestionably, an arbitrator should and must reveal any circumstances that might hinder the rendering of an objective determination. See *TUCO, Inc.,* 960 S.W.2d at 636. In close cases, potential arbitrators should err on the side of disclosure, revealing information even when the law may not technically require it. See *id.* at 633. Doing so will help curb abuses by disgruntled parties searching for a means of invalidating an unwanted result based on unrevealed information.

---

5. See *Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 151, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (stating that an arbitrator "cannot be expected to provide parties with his complete and unexpurgated business biography") (White, J., concurring).

6. See *id.* at 150, 89 S.Ct. 337 ("I see no reason automatically to disqualify the best informed and most capable potential arbitrators.")

Though, in this case, it would have been better if Paxson had expressly disclosed his attorney-client relationship with GHBA, that relationship did not rise to the level of information that an arbitrator is required to reveal under *TUCO*. The fact Paxson had long served as counsel to GHBA, standing alone, is insufficient to prompt an objective observer to reasonably question his impartiality in a dispute in which that group was not a party or witness and had no interest. In finding that this peripheral relationship had to be disclosed, the court casts too wide a net. Absent facts that reasonably suggest that parties who are members of such a large association have some control or influence, their membership does not make the mere existence of an attorney-client relationship between the arbitrator and a non-party/non-witness trade association material and is not a fact that, to an objective observer, might create a reasonable impression of arbitrator partiality. Therefore, the arbitrator's failure to reveal this information does not constitute evident partiality and does not warrant vacatur of the arbitration award.